**MORGAN, LEWIS & BOCKIUS LLP**
*(Pennsylvania Limited Liability Partnership)*
502 Carnegie Center
Princeton, New Jersey 08540-7814
Terry D. Johnson
Jason J. Ranjo
(609) 919-6669

Grace E. Speights (*pro hac vice*)
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
(202) 739-5189

*Attorneys for Defendants JPMorgan Chase Bank, N.A.*
*and James Dimon*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WANDA WILSON,<br><br>       Plaintiff,<br><br>  v.<br><br>JPMORGAN CHASE, JAMES DIMON, individually and in his official capacity, JANE and/or JOHN DOES 1-10, and XYZ Entities 1 to 10.<br><br>       Defendants. | Case No.: 2:18-cv-13789-JMV-JBC<br><br>**Oral Argument Requested**<br><br>*ELECTRONICALLY FILED*<br><br>**Motion Day: November 5, 2018** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF RELEVANT FACTS......................................................4

    A.   After Working For JPMC For Nearly 18 Years Without
        Incident, Plaintiff Developed A Negative Relationship With A
        Co-Worker. ........................................................................................4

    B.   Plaintiff Alleges That Her Manager Docked Her Pay After
        Plaintiff Complained About Her Co-Worker.......................................5

    C.   Plaintiff Began Writing Mr. Dimon To Complain About Her
        Manager And Her Co-Worker, And JPMC Granted Her A
        Medical Leave Of Absence. ................................................................6

    D.   Plaintiff Returned From Medical Leave And Began Working
        With JPMC Recruiters To Find Another Position With The
        Bank..................................................................................................7

    E.   Plaintiff Failed To Find A New Position Within JPMC, And
        Her Employment Was Terminated....................................................12

III.   ARGUMENT......................................................................................13

    A.   The Applicable Legal Standard........................................................13

    B.   Plaintiff's LAD Claims Should Be Dismissed Because She Was
        Not Employed By JPMC in the State of New Jersey and
        Therefore Falls Outside of the Scope of the Statute. ........................15

    C.   Plaintiff's Tort Claims Should Be Dismissed Because They Are
        Preempted By State Law. .................................................................17

        1.   Plaintiff's intentional and negligent infliction of
            emotional distress claims are preempted by the LAD.............17

        2.   Plaintiff's negligent infliction of emotional distress claim
            is preempted by the WCA......................................................19

    D.   Plaintiff's Tort Claims Should Be Dismissed Because They Are
        Inadequately Pled. ...........................................................................21

        1.   Plaintiff has failed to adequately plead the necessary
            elements of her intentional infliction of emotional
            distress claim.........................................................................21

# TABLE OF CONTENTS
### (continued)

**Page**

      2.    Plaintiff has failed to adequately plead the necessary elements of her negligent infliction of emotional distress claim ........................................................................................... 26

  E.    Plaintiff's Claims Against Mr. Dimon Should Be Dismissed. .......... 30

      1.    Plaintiff fails to allege viable LAD claims against Mr. Dimon ...................................................................................... 30

      2.    Plaintiff fails to allege viable tort claims against Mr. Dimon ...................................................................................... 34

IV.    CONCLUSION ........................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.S.T., LLC v. Carvin Pallenberg*,
   No. CIV. 07-795JAP, 2008 WL 2074010 (D.N.J. May 15, 2008).....................34

*Abouzaid v. Mansard Gardens Ass'n, LLC*,
   207 N.J. 67 (2011) ............................................................................................27

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994) ...............................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................13, 14

*Bartone v. NetJets, Inc.*,
   No. CIV.A. 11-8 MLC, 2011 WL 2532497 (D.N.J. June 24, 2011).................33

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................13

*Bethea v. Roizman*,
   No. CIV. 11-254 JBS/JS, 2012 WL 2500592 (D.N.J. June 27,
   2012) ................................................................................................................34

*Bishop v. Inacom, Inc.*,
   No. CIV. A. 99-664 (JBS), 1999 WL 1416919 (D.N.J. Dec. 1,
   1999) ................................................................................................................25

*Bowie v. Costco Wholesale Corp.*,
   No. CV 16-5808-BRM-LHG, 2017 WL 3168985 (D.N.J. July 26,
   2017) ................................................................................................................22

*Brangan v. Ball Plastic Container Corp.*,
   No. CIV. 11-5470 RBK/KMW, 2012 WL 1332663 (D.N.J. Apr.
   17, 2012) ..........................................................................................................20

*Brown v. Joel Tanis & Sons, Inc.*,
   No. 2:13-CV-02984 (WJM), 2016 WL 3951378 (D.N.J. July 21,
   2016) ................................................................................................................32

*Brunner v. AlliedSignal, Inc.*,
   198 F.R.D, 612 (D.N.J. 2001)..............................................................................17

*Buccilli v. Timby, Brown & Timby*,
   283 N.J. Super. 6 (App. Div. 1995) .............................................................2, 15

*Buckley v. Trenton Saving Fund Soc'y*,
   111 N.J. 355 (1988) .........................................................................................22

*Celestin v. W. Deptford Twp.*,
   No. 15-7608, 2016 WL 5539584 (D.N.J. Sept. 29, 2016)................................27

*Cicchetti v. Morris Cnty. Sheriff's Office*,
   194 N.J. 563 (2008) ...........................................................................30, 31, 33

*Collins v. James W. Turner Constr., Ltd*,
   No. CV162877FLWLHG, 2017 WL 210236 (D.N.J. Jan. 18, 2017) ...............33

*D'Agostino v. Johnson & Johnson, Inc.*,
   133 N.J. 516 (1993) .........................................................................................15

*DeLane ex rel. DeLane v. City of Newark*,
   343 N.J. Super. 225 (App. Div. 2001) ............................................................19

*DePasquale v. Morgan Stanley Smith Barney LLC*,
   No. 10-6828, 2011 WL 3703110 (D.N.J. Aug. 23, 2011)................................13

*DeSantis v. New Jersey Transit*,
   103 F. Supp. 3d 583 (D.N.J. 2015)..................................................................31

*DeSantis v. New Jersey Transit*,
   No. CV 14-3578 (KM)(MAH), 2017 WL 5050039 (D.N.J. Nov. 3,
   2017) ...............................................................................................................30

*Diana v. AEX Grp.*,
   No. 11-1838, 2011 WL 4005333 (D.N.J. Sept. 7, 2011)..................................15

*Dimare v. MetLife Ins. Co.*,
   Civ. No. 07–4268 (GEB), 2008 WL 2276007 (D.N.J. June 2, 2008) ...............20

*Fleming v. United Parcel Serv., Inc.*,
   255 N.J. Super. 108 (Law. Div. 1992)..............................................................27

*Frame v. Kothari*,
115 N.J. 638 (1989) ................................................................................26

*Gaines v. United Parcel Serv., Inc.*,
No. 2:13-3709 (KM)(MCA), 2014 WL 1450113 (D.N.J. Apr. 14,
2014) ....................................................................................17, 18, 25

*Gok v. Ports Am., Inc.*,
No. CIV.A. 15-3468 SRC, 2015 WL 4915518 (D.N.J. Aug. 17,
2015) ..............................................................................................25, 29

*Goodman v. Port Auth. of New York & New Jersey*,
850 F. Supp. 2d 363 (S.D.N.Y. 2012) ................................................26

*Guarneri v. Buckeye Pipe Line Servs. Co.*,
No. CIV.A. 14-1131 JBS, 2014 WL 1783072 (D.N.J. May 5, 2014) ...............32

*Hilburn v. Bayonne Parking Auth.*,
No. CIV. A. 07-CV-5211, 2009 WL 235629 (D.N.J. Jan. 30, 2009)................20

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
822 F. 3d 125 (3d Cir. 2016) ...............................................................14

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ..............................................................14

*Jablonowska v. Suther*,
195 N.J. 91 (2008) .............................................................................27

*Jaffe v. Vatech, Inc.*,
No. CIV. 10-5652 DMC JAD, 2011 WL 3704017 (D.N.J. Aug. 23,
2011) .................................................................................................15

*King v. Port Auth. of New York and New Jersey*,
909 F. Supp. 938 (D.N.J. 1995) ....................................................16, 22

*LeJon-Twin El v. Marino*,
No. CV162292KMMAR, 2017 WL 592232 (D.N.J. Feb. 14, 2017)................14

*Mahanandigari v. Tata Consultancy Servs.*,
No. CV 16-8746 (JLL), 2018 WL 396235 (D.N.J. Jan. 11, 2018)....................16

*Mahanandigari v. Tata Consulting Servs.*,
No. 216CV08746JLLSCM, 2017 WL 6892918 (D.N.J. Nov. 9, 2017) ...................................................................................................16

*McGovern v. Sw. Airlines*,
No. CIV.A. 12-3579 JBS, 2013 WL 135128 (D.N.J. Jan. 8, 2013) ...................15

*Metzler v. Am. Transp. Grp., L.L.C*,
No. CIV. A. 07-2066 JLL, 2008 WL 413311 (D.N.J. Feb. 13, 2008). ..................................................................................................17

*Moore v. Passaic Cnty. Tech. Inst.*,
2006 WL 1585706 (App. Div. June 12, 2006) ..................................................20

*Norenius v. Multaler, Inc.*,
No. A-4481-06T2, 2008 WL 4162878 (App. Div. Sept. 11, 2008) ...................19

*Peikin v. Kimmel & Silverman, P.C.*,
576 F. Supp. 2d 654 (D.N.J. 2008).....................................................................15

*Pollis v. Bd. of Chosen Freeholders of Cty. of Sussex*,
No. CIV.A. 09-3009 (SRC), 2009 WL 5064634 (D.N.J. Dec. 15, 2009) ...................................................................................................28

*Ribustello v. Wilson Sporting Goods Co.*,
No. 12–2326, 2013 WL 140096 (D.N.J. Jan. 10, 2013)....................................33

*Rivera v. Cracker Barrel Old Country Store Inc.*,
No. 02-4160(JBS), 2003 WL 21077965 (D.N.J. Mar. 3, 2003).......................19

*Roman v. Waste Mgmt. of New Jersey*,
No. CIV.A. 10-4337 JAP, 2011 WL 1807642 (D.N.J. May 12, 2011) ...................................................................................................30

*Ross-Tiggett v. Reed Smith LLP*,
No. CV 15-8083, 2016 WL 4491633 (D.N.J. Aug. 25, 2016) ..........................31

*Satz v. Tapina*,
No. CIV.A. 01–5921(JBS), 2003 WL 22207205 (D.N.J. Apr. 15, 2003) ...........................................................................................15, 16

*Silvestre v. Bell Atl. Corp.*,
973 F. Supp. 475 (D.N.J. 1997)..........................................................................20

*Smith v. Exxon Mobil Corp.*,
374 F. Supp. 2d 406 (D.N.J. 2005) ...................................................................21

*Soliman v. Kushner Companies, Inc.*,
433 N.J. Super. 153 (App. Div. 2013) ...............................................................26

*Tarr v. Ciasulli*,
181 N.J. 70 (2004) .............................................................................................31

*Torrey v. New Jersey*,
No. CIV.A. 13-1192 PGS T, 2014 WL 941308 (D.N.J. Mar. 11,
2014) ..................................................................................................................29

*Turkus v. Util. Mfg. Co.*,
No. 06-4218, 2007 WL 1040986 (D.N.J. Apr. 4, 2007) .............................15, 23

*Valentine v. Bank of Am.*,
No. 09-262, 2010 WL 421087 (D.N.J. Feb. 1, 2010) ........................................17

*Van Tassel v. Ocean Cty.*,
No. CV 16-4761-BRM-TJB, 2017 WL 5565208 (D.N.J. Nov. 17,
2017) ..................................................................................................................27

*Weinberg v. Interep Corp.*,
No. CIV. 05-5458 (JBS), 2006 WL 1096908 (D.N.J. Apr. 26,
2006) ...................................................................................................15, 16, 19

*Witherspoon v. Rent–A–Center, Inc.*,
173 F. Supp. 2d 239 (D.N.J. 2001) ...................................................................22

STATUTES

N.J.S.A. 10:5-12e ......................................................................................................30

N.J.S.A. 34:15-8.................................................................................................19, 20

New Jersey's Workers' Compensation Act .............................................2, 19, 20, 21

New Jersey Law Against Discrimination ........................................................passim

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ........................................................passim

# I.    <u>INTRODUCTION</u>

Wanda Wilson ("Plaintiff"), who was formerly employed by JPMorgan Chase Bank, N.A. ("JPMC" or the "Bank") (incorrectly identified in the Complaint as "JPMorgan Chase") commenced this employment lawsuit against JPMC and the Chairman and Chief Executive Officer of JPMC's parent company, James Dimon (collectively with JPMC, "Defendants), asserting claims of race discrimination, retaliation, and hostile work environment in violation of the New Jersey Law Against Discrimination ("LAD"), as well as tort claims for intentional and negligent infliction of emotional distress.  Even accepted as true, however, the allegations in Plaintiff's Complaint fail to sufficiently plead a single claim for which any relief can be granted by the Court.  Accordingly, Defendants respectfully request the Court to dismiss Plaintiff's Complaint in its entirety with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

First, each of Plaintiff's claims under the LAD should be dismissed because it is well-settled that the LAD's protections do not apply to individuals, like Plaintiff, who worked exclusively in a state other than New Jersey.  In a classic case of improper forum shopping and legal gamesmanship, Plaintiff filed this lawsuit, asserting principally employment-related claims under the LAD, in the Superior Court of New Jersey – Essex County, even though she never worked for JPMC in the state of New Jersey or Essex County, she does not live in Essex County, and

none of the alleged conduct giving rise to this lawsuit is alleged to have occurred in Essex County.  In fact, Plaintiff worked for JPMC exclusively in New York City for more than 20 years.  While Plaintiff commuted to New York from her home in New Jersey (Middlesex County), the Complaint contains no facts whatsoever that are alleged to have occurred in this State.  In light of the foregoing, and as more fully discussed below, the Court should follow the overwhelming weight of judicial authority and dismiss Plaintiff's LAD claims.

Second, Plaintiff's tort claims for negligent and intentional infliction of emotional distress also should be dismissed because they are statutorily preempted. Both claims are based on the same employment-related allegations undergirding Plaintiff's LAD claims and are, therefore, expressly preempted by the exclusivity provision of that statute.  Plaintiff's negligent infliction of emotional distress claim also is preempted by the exclusivity provision of the New Jersey's Workers' Compensation Act ("WCA"), which, as this Court has repeatedly recognized, provides the exclusive remedy for employees asserting negligence claims arising from their employment.

Even if Plaintiff's tort claims were not statutorily preempted, they should nonetheless be dismissed because Plaintiff's conclusory allegations (e.g., that Plaintiff was subjected to "extreme or outrageous" conduct), are insufficient to satisfy the pleading requirements to establish a claim under applicable law.  At best,

Plaintiff's Complaint alleges routine employment-related disputes that do not begin to approach the level necessary to maintain a viable intentional infliction of emotional distress claim.  Plaintiff's allegations fail to an even greater extent to meet the standards required to establish a negligent infliction of emotional distress claim, which requires proof that a plaintiff faced fear of serious injury to herself or a family member.  In short, Plaintiff's Complaint falls woefully short of asserting facts to support her negligent and intentional infliction of emotional distress claims.

Finally, even if Plaintiff's claims against JPMC were to survive the instant motion, which they should not, the claims against Mr. Dimon should be dismissed because Plaintiff fails to allege any conduct by Mr. Dimon that could support a viable LAD or tort claim.  Plaintiff's Complaint merely alleges that she attended a town hall meeting led by Mr. Dimon, periodically provided "back-up" support to employees in Mr. Dimon's office, and addressed certain correspondence, in which she complained about work-related matters, to him on multiple occasions.  Plaintiff does not allege that Mr. Dimon, CEO of the firm which employs more than 250,000 employees, managed or made any employment decisions relative to her specifically.  Plaintiff's allegations are fatally deficient from a pleading perspective and fail to establish any basis for personal liability against Mr. Dimon. Naming Mr. Dimon as an individual defendant in these proceedings is nothing more than a transparent attempt to harass and inconvenience the chief executive of a global financial services

firm who had nothing whatsoever to do with any decisions relating to Plaintiff's employment.

For these reasons, as set forth more fully below, the Court should grant Defendants' Motion and dismiss the Complaint in its entirety with prejudice for failure to state a claim, pursuant to Rule 12(b)(6).

## II.   STATEMENT OF RELEVANT FACTS[1]

### A.   After Working For JPMC For Nearly 18 Years Without Incident, Plaintiff Developed A Negative Relationship With A Co-Worker.

Plaintiff is a resident of Middlesex County, New Jersey who worked as an administrative assistant for JPMC from 1997 to 2018.  Compl. ¶¶ 1, 10.  In March 2016, Plaintiff worked as the administrative assistant supporting Paul Jenson, Managing Director, Chief Administrative Officer and Head of Audit.  *Id.* ¶ 26.  At that time, Janet Jarnigan, and Executive Director, was assigned as a team leader under Mr. Jenson.  *Id.* ¶ 27.  Plaintiff alleges that, although she and Ms. Jarnigan initially "worked well as a team," as Ms. Jarnigan "developed a closer working relationship" with Mr. Jenson, she treated Plaintiff with less respect and began ordering Plaintiff to complete certain tasks.  *Id.* ¶¶ 28-31.  Plaintiff alleges that when she complained to Mr. Jensen that Ms. Jarnigan "was exceeding her authority" and

---

[1]     For the purposes of this Motion only, the allegations in the Complaint are accepted as true.

"spreading false rumors" about her, Mr. Jensen advised Plaintiff that she was "being a 'bit dramatic.'"  *Id.* ¶¶ 35-36.

**B.    Plaintiff Alleges That Her Manager Docked Her Pay After Plaintiff Complained About Her Co-Worker.**

Plaintiff alleges that she complained to Samantha Garber, an Executive Director & Head of Human Resources for Audit, and thereafter noticed that Mr. Jensen started "treating her with distrust" and responding to her in a "terse and dismissive" manner.  *Id.* ¶¶ 37-39.  Plaintiff  alleges that she "also noticed her colleagues distancing themselves from her . . . causing her to feel increasingly isolated."  *Id.* ¶ 40.  On April 5, 2017, Plaintiff contends that she complained again to Ms. Garber, reporting that Ms. Jarnigan "was spreading false rumors and sabotaging Plaintiff['s] . . . reputation," as well as "belittling her work ethic and causing other employees to treat her differently."  *Id.* ¶¶ 45-46.  Plaintiff alleges that she informed Ms. Garber that she had contacted JPMC's Employee Assistance Program ("EAP"), which referred her to a therapist, and that Ms. Garber told her that Barrak Green in Employee Relations would contact her regarding her complaints. *Id.* ¶¶ 47-48.

### C.     Plaintiff Began Writing Mr. Dimon To Complain About Her Manager And Her Co-Worker, And JPMC Granted Her A Medical Leave Of Absence.

On April 17, 2017, Plaintiff sent an email to Mr. Dimon's email address, copying Ms. Garber, Mr. Green, and Charity Blackburn of JPMC Employee Relations, stating:

- Mr. Jensen allegedly had "docked [Plaintiff] one week's pay . . . in retaliation for having reported him and Jarnigan to Human Resources" (*id.* ¶ 53-55);

- Ms. Jarnigan texted Mr. Jenson while he was on vacation to advise him that Plaintiff was "using his office phone" (*id.* ¶ 56);

- Ms. Jarnigan had been spreading "negative rumors and innuendos" about Plaintiff (*id.*); and

- Ms. Jarnigan was "using [Mr.] Jensen's vacation as an opportunity to further harass Plaintiff . . . and treat her as a waitress/servant" (*id.* ¶ 57).

Plaintiff wrote that she had two options: either "take 'short term disability'" or "return to work and continue to be tortured, degraded and humiliated." *Id.* ¶ 58.

On or about April 17, 2017, Plaintiff discovered an email from Cherie Niswonger, a Vice President in Employee Relations, to Mr. Jensen, advising him that Plaintiff "had notified Defendant Dimon that Jensen docked her pay, and that . . . [Plaintiff] suffered from anxiety." *Id.* ¶ 59.

Plaintiff alleges that she left work early the following day, and was admitted to the hospital "with chest pains, high blood pressure and breathing issues" on April 19, 2017. *Id.* ¶¶ 61-62.  The following day, April 20, 2017, Plaintiff "was transferred

to the Hospital's psychiatric unit on suicide alert." *Id.* ¶ 63. She alleges that, on April 24, 2017, Mr. Jensen denied her "request for additional sick days requiring that she request emergency vacation from [Ms.] Garber." *Id.* ¶ 64.

Plaintiff alleges that she again sent an email to Mr. Dimon on Administrative Assistants' Day requesting assistance, noting that he had reportedly stated, at a secretarial town hall meeting, that if a JPMC employee "sees something they should say something, and he would provide support and follow the emails until the matter is resolved." *Id.* ¶ 65.

### D. Plaintiff Returned From Medical Leave And Began Working With JPMC Recruiters To Find Another Position With The Bank.

Plaintiff alleges that on June 9, 2017, JPMC extended her disability leave by 30 days, but refused any further disability leave, as she was allegedly "ready to come to work as of July 7, 2017." *Id.* ¶¶ 67-68. Around that time, Clarissa Ramos-Cafarelli, Managing Director, Employee Relations, contacted Plaintiff and advised that recruiters would be working with her to assist her in finding a new position at JPMC. *Id.* ¶ 69.

Plaintiff alleges that on July 7, 2017, she sent a third email to Mr. Dimon, copying Ms. Ramos-Cafarelli and Julie Johnson, Human Resources, this time referring to an purported "conspiracy theory" against her. *Id.* ¶ 71.

On July 12, 2017, Plaintiff contends that she was prepared to return to work but had no specific assignment and, by July 24, 2017, "had yet to hear from anyone from [JPMC's] team of recruiters."  *Id.* ¶¶ 73-74.

On August 10, 2017, Plaintiff sent a fourth email to Mr. Dimon, copying Ms. Johnson, Ms. Ramos-Cafarelli, Daniel Conti of JPMC's Global Employee Assistance & Worklife Program, "referencing 'Racism at its best'" in the subject line and stating:

> Please stop harassing me.  Please stop judging me by the color of my skin and start respecting me as a person, a black woman who spoke up regardless of the consequences.  As I have said on numerous occasions, I understand that everyone involved in this racist situation works for JPMorgan and I am the underdog.  I get it, you are not trying to help me. If you were trying to help me or keep me employed, I would not be sitting at home. Clarissa told me approximately one month ago that a recruitment team would be in touch to help me find a new position within JPMorgan, to date, I have not had one interview via phone or in person.  I have worked with JPMorgan for 20+ years with Meets plus performance reviews and JPMorgan can't find a new position?  WOW that is surprising.
>
> It is clear that JPMorgan does not have good intentions in this "Discriminatory situation."

*Id.* ¶ 76.  In that email, Plaintiff also mentioned an incident with JPMC's security personnel in which she felt that "she was [being] portrayed as an 'angry black person,'" stating to Mr. Dimon "that she was incapable of harming anyone, even herself, despite her prior suicidal ideations."  *Id.* ¶ 77.  Plaintiff further wrote:

> The bottom line to this situation is disappointing and I am appalled. For four months, at the hands of JPMorgan, I have suffered mentally, emotionally and physically. I have been violated medically, emotionally destroyed, humiliated as a human being and my life is ruined.

*Id.* ¶ 78.

Plaintiff alleges that on or about August 23, she received, what she claims is a severance agreement from JPMC. *Id.* ¶ 79.

Plaintiff claims that on October 11, 2017, she emailed Mr. Dimon for a fifth time, referencing "'Whistleblower-Racism – Separation Agreement,'" and stating:

> I wrote to you on several occasions and each time I emailed you my life took a turn for the worst [sic]. I apologize for believing in you and taking up your time. For some bizarre reason I think my life matters to you. JPMorgan failed me!

*Id.* ¶ 82. Plaintiff alleges that she also made reference to her alleged experiences over the prior seven months, including her hospitalization, medical leave of absence from JPMC, and the separation agreement she received following her return to work. *Id.* ¶ 83. Plaintiff claims that she was advised that "she was scheduled to be terminated on November 1, 2017, if she failed to find another position or refused to sign the separation agreement." *Id.*

Plaintiff emailed Mr. Dimon again on October 11th, stating, in part:

> You gave me the strength to speak up against my better judgment. My question is why? You said you would not tolerate black employees being treated differently and what has happened and is still happening to me is the opposite of what you preach.

> I have three strikes against me.  I am Black, I am 55 years of age, and I do not have a degree.  You are probably saying why is this my problem?  Well it is your problem because JPMorgan allowed me to win.  I went above and beyond the call of duty to make sure that every Officer that I supported was successful.  I worked long hours and I watched white secretaries graduate to areas where I should have been allotted the opportunity.  I accepted this disadvantage with a smile and with grace.
>
> . . . .
>
> I emailed you five letters trying to save my own life/job and my emails have been ignored or used to try to intimidate me.  I have been humiliated beyond repair and the discrimination is still growing.

*Id.* ¶ 85.

Plaintiff alleges that she was advised by email dated November 3, 2017, that she had to undergo a fitness for duty evaluation and provide medical records related to her disability.  *Id.* ¶ 86.

On November 8, 2017, Plaintiff alleges that she sent a seventh email to Mr. Dimon with the subject heading "Violation of Medical Rights/Separation Agreement to Close EEOC Complaint."  *Id.* ¶ 87.  In that email, Plaintiff allegedly asked Mr. Dimon, among other things, if he would allow his daughter to surrender all of her medical records.  *Id.* ¶ 88.

On November 9, 2017, JPMC renewed its request for a fitness for duty examination based, in part, on Plaintiff's suicidal ideations, but Plaintiff stated that she felt "[t]here was no need to subject [her] . . . to [an] . . . examination other than to further harass her."  *Id.* ¶¶ 89-92.

On or about December 28, 2017, Plaintiff alleges that she was asked to meet with a JPMC recruiter, Gailit Pearlman to assist her in finding a new position at JPMC. *Id.* ¶ 93. Plaintiff claims that she traveled to New York to meet Pearlman, but when she arrived, Plaintiff learned that Ms. Pearlman intended for them to speak by telephone, rather than in person. *Id.* ¶ 95.

The following day, December 29, 2017, Plaintiff emailed Mr. Dimon for the eighth time, copying JPMC's in-house legal counsel and noting, in part:

> How dare JPMorgan continue to humiliate and degrade me! This nonsense needs to stop immediately! This is emotional and mental abuse. I am trying to keep myself together but JPMorgan keeps pouring salt in a wound that I am trying to heal. JPMorgan destroyed every holiday in 2017 for me and took away my bonus and increase for 2018. Please don't ruin my New Year. Thanks to JPMorgan I cannot say Happy New Year as I am not happy and will not be happy until JPMorgan stops tormenting me for not signing the Separation Agreement.

*Id.* ¶ 96.

Plaintiff alleges in her complaint, that in or around February 2018, she advised JPMC that she would not resign, sign a separation agreement, or accept disability benefits, and wanted to "return to work in a position which was comparable to the salary responsibilities and location where she had most recently worked." *Id.*

On February 3, 2018, Plaintiff emailed Mr. Dimon for the ninth and final time, writing "JPMorgan's Retaliation has turned to insults" and purportedly repeating themes she had included in prior correspondence. *Id.* ¶ 99.

11

Plaintiff does not allege that Mr. Dimon ever responded to this or to any of her prior eight emails to him or otherwise engaged with her specifically or had any input or involvement in any decision related to her employment.

Plaintiff alleges that, on or about March 9, 2018, JPMC offered her a position that was several levels below her prior grade. She also claims that the position supported an individual with whom she allegedly had "difficulties" in the past. *Id.* ¶ 100.

Plaintiff contends that she had a number of interviews for positions selected by JPMC, which she alleges were beneath her experience and expertise. *Id.* ¶ 101. Plaintiff alleges that she went on  series of interviews for positions that she selected, that she received positive feedback, but she was not selected for any of those positions,  "due to [JPMC's] representation that she 'lacked enthusiasm.'" *Id.* ¶¶ 104-05.

### E.    Plaintiff Failed To Find A New Position Within JPMC, And Her Employment Was Terminated.

Plaintiff alleges that she was advised by letter, dated May 24, 2018, "that her employment would terminate effective May 29, 2018 if she was unable to find a position with [JPMC] or if she was not retained in an unpaid status." *Id.* ¶ 107. Plaintiff alleges that by May 29, 2018, she believed her employment had terminated and she applied for unemployment compensation benefits with the New York State Department of Labor ("DOL") and began to receive such benefits. *Id.* ¶¶ 108-10.

Plaintiff alleges that by email, dated June 14, 2018, the DOL advised her that "she was being charged with fraud" based on JPMC advising the DOL that she "had not been terminated on May 29, 2018." *Id.* ¶ 110.  Plaintiff acknowledges that she continued to receive pay checks from JPMC, but alleges that she believed that the monies were for any accrued, unused personal time off.  *Id.* ¶ 111-12.

Plaintiff alleges that JPMC represented that her employment was not terminated until June 14, 2018.  *Id.* ¶ 113.

## III.   ARGUMENT

### A.   The Applicable Legal Standard.

Pursuant Rule 12(b)(6), a complaint must be dismissed, "in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted." *DePasquale v. Morgan Stanley Smith Barney LLC*, No. 10-6828, 2011 WL 3703110, at *2 (D.N.J. Aug. 23, 2011).  Although courts are generally required to accept factual allegations in a complaint as true and draw reasonable inferences in favor of the non-moving party, the Court is not bound by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the Court need not credit a Plaintiff's "bald assertions," or "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 697 (quoting *Bell*

13

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining whether a plaintiff has satisfied this standard, courts must first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  After disregarding these conclusory allegations and threadbare assertions, a court should then accept as true only the remaining factual allegations and determine whether those allegations "plausibly give rise to an entitlement to relief."  *Id.*

In deciding a motion filed under Rule 12(b)(6), a court "may consider 'document[s] integral to or explicitly relied upon in the complaint'" without converting the motion into one for summary judgment.  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F. 3d 125, 134 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  "In such a case, the document itself, rather than the complaint's description of it, must control."  *LeJon-Twin El v. Marino*, No. CV162292KMMAR, 2017 WL 592232, at *1 n.1 (D.N.J. Feb. 14, 2017); *see ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").

Applying these standards to the allegations in the Complaint, the Court should dismiss all of Plaintiff's claims in their entirety with prejudice, pursuant to Rule 12(b)(6).

**B.    Plaintiff's LAD Claims Should Be Dismissed Because She Was Not Employed By JPMC in the State of New Jersey and Therefore Falls Outside of the Scope of the Statute.**

Plaintiff's LAD claims should be dismissed because the Complaint is devoid of any allegations that Plaintiff ever worked for JPMC in New Jersey.  It is well-settled that the purpose of the LAD is to regulate "conduct in New Jersey, not outside the state." *Buccilli v. Timby, Brown & Timby*, 283 N.J. Super. 6, 10 (App. Div. 1995) (citing *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 539 (1993)). Consistent with that limiting principle, this Court has repeatedly maintained that the state where a plaintiff was employed is the state with the greatest interest in resolving discrimination claims.  *See Weinberg v. Interep Corp.*, No. CIV. 05-5458 (JBS), 2006 WL 1096908, at *7 (D.N.J. Apr. 26, 2006) ("Looking to the state of employment ensures that the law in the jurisdiction with the strongest interest in the outcome of the litigation controls."); *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 658 (D.N.J. 2008) (same); *McGovern v. Sw. Airlines*, No. CIV.A. 12-3579 JBS, 2013 WL 135128, at *2 (D.N.J. Jan. 8, 2013) (same).  For that reason, "courts have . . . only applied the []LAD ***if the plaintiff worked in New Jersey***." *Satz v. Tapina*, No. CIV.A. 01–5921(JBS), 2003 WL 22207205, at *16 (D.N.J. Apr. 15, 2003) (emphasis added); *Jaffe v. Vatech, Inc.*, No. CIV. 10-5652 DMC JAD, 2011 WL 3704017, at *2 (D.N.J. Aug. 23, 2011) (same).  Indeed, this Court has invariably granted motions to dismiss pursuant to Rule 12(b)(6) where the plaintiff

15

seeking to assert claims under the LAD was not employed in New Jersey.  *See, e.g.*, *Diana v. AEX Grp.*, No. 11-1838, 2011 WL 4005333, at *3 (D.N.J. Sept. 7, 2011) (granting motion to dismiss NJLAD claims where plaintiff, a New Jersey resident, worked in Pennsylvania); *Turkus v. Util. Mfg. Co.*, No. 06-4218, 2007 WL 1040986, at *2 (D.N.J. Apr. 4, 2007) (granting motion to dismiss LAD claim where plaintiff, a New Jersey resident, worked in New York).

Here, Plaintiff has not alleged *any* facts to establish that the LAD would apply to her claims.  While Plaintiff seemingly deliberately avoids mention of the fact that she worked for JPMC for more than 20 years exclusively in New York City, she alleges in her complaint that she applied for and began receiving unemployment compensation benefits" from the _New York_ State Department of Labor.  *See* Compl. ¶¶ 108-10.  Stated simply, Plaintiff does not assert that she was employed in New Jersey at any time, and, in fact, she was not.  This fact alone mandates dismissal of her LAD claims.  Significantly, the fact that Plaintiff lived in New Jersey is irrelevant to the analysis of whether the LAD applies.  *See Satz*, 2003 WL 22207205, at *17 (that plaintiff lived in New Jersey is "insufficient to trigger the []LAD"); *Mahanandigari v. Tata Consulting Servs.,* No. 216CV08746JLLSCM, 2017 WL 6892918, at *3 (D.N.J. Nov. 9, 2017) (The "[]LAD does not apply to the discrimination claims of . . . New Jersey residents who work outside of the state"), report and recommendation adopted sub nom. *Mahanandigari v. Tata Consultancy*

16

*Servs.*, No. CV 16-8746 (JLL), 2018 WL 396235 (D.N.J. Jan. 11, 2018); *Weinberg*,

2006 WL 1096908, at *6 (Pennsylvania law applies where "[plaintiff] was employed

at [defendant's] Philadelphia, Pennsylvania office," regardless of "the state of the

employee's residence"); *Brunner v. AlliedSignal, Inc.,* 198 F.R.D. 612, 613-14

.(D.N.J. 2001) (grating motion to dismiss LAD claims, where plaintiff lived in New

Jersey and worked in Pennsylvania).

In sum, Plaintiff has not stated a viable right to relief under the LAD because

she has failed to allege that she worked in New Jersey.  As such, Plaintiff's LAD

claims (Counts One, Two, Three, and Six of the Complaint) should be dismissed.

## C.   Plaintiff's Tort Claims Should Be Dismissed Because They Are Preempted By State Law.

### 1.   Plaintiff's intentional and negligent infliction of emotional distress claims are preempted by the LAD.

Plaintiff's tort claims for intentional and negligent infliction of emotional

distress (Counts Four and Five of the Complaint) should be dismissed because they

are preempted by the LAD.  It is well-settled that the LAD "preempts any

supplemental common law tort action that is based 'on the same factual predicate.'"

*Gaines v. United Parcel Serv., Inc.*, No. 2:13-3709 (KM)(MCA), 2014 WL 1450113,

at *5 (D.N.J. Apr. 14, 2014) (quoting *Metzler v. Am. Transp. Grp., L.L.C*, No. CIV.

A. 07-2066 JLL, 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008)).  Consistent with

that principle, courts routinely dismiss common law claims – including intentional

and negligent infliction of emotional distress – that are based on the same employment-related allegations underlying the plaintiff's LAD claims.  *See e.g.*, *Valentine v. Bank of Am.*, No. 09-262, 2010 WL 421087, at *6 (D.N.J. Feb. 1, 2010) (denying motion to amend complaint to add intentional infliction of emotional distress claim that was "based on the same allegations supporting Plaintiff's LAD claim"); *Metzler v. Am. Transp. Grp.*, L.L.C., No. 07–2066 (JLL), 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008) (dismissing negligent and intentional infliction of emotional distress claims that were "based on the same operative facts as . . . claims under the [LAD]"); *Gaines*, 2014 WL 1450113, at *5 (dismissing intentional infliction of emotional distress claim as duplicative of LAD claims) (collecting cases).

Here, Plaintiff's claims for intentional and negligent infliction of emotional distress are based on the same facts underlying her LAD claims.  Indeed, these specific counts contain no unique factual allegations and instead merely "repeat[] the previous allegations" of the Complaint and add only conclusory statements, including that "Defendants engaged in extreme and outrageous conduct directed at Plaintiff Wilson" and, similarly, that "Defendants acted negligently in their disregard of the high degree of probability that emotional distress would follow."  Compl. ¶¶ 137-147.  Moreover, those counts specifically reference the purported "hostile working environment and discrimination [Plaintiff] . . . experienced while employed

18

at [JPMC]" as the basis for Plaintiff's tort claims.   Accordingly, Plaintiff's intentional and negligent infliction of emotional distress claims are based squarely upon the facts upon which she purports to rely to establish her statutory employment claims, and, therefore, are preempted by the LAD and should be dismissed.[2]

### 2.     Plaintiff's negligent infliction of emotional distress claim is preempted by the WCA.

Plaintiff's negligent infliction of emotional distress claim (Count Five of the Complaint) should be dismissed for the additional reason that it is preempted by the WCA.  It is well-settled that the WCA "provides the exclusive remedy for workplace injuries that involve employer negligence."  *Rivera v. Cracker Barrel Old Country Store Inc.*, No. 02-4160(JBS), 2003 WL 21077965, at *5 (D.N.J. Mar. 3, 2003); *DeLane ex rel. DeLane v. City of Newark*, 343 N.J. Super. 225, 237 (App. Div. 2001) (recognizing that the WCA "contains an exclusive remedy provision that precludes employees from maintaining separate tort actions against their employers" for personal injuries (citing N.J.S.A. 34:15-8)).  The statute provides, in pertinent part:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on

---

[2]     Plaintiff's tort claims should be dismissed irrespective of whether her LAD claims survive the instant motion to dismiss.  *See Norenius v. Multaler, Inc.*, No. A-4481-06T2, 2008 WL 4162878, at *8 (App. Div. Sept. 11, 2008) (dismissing tort claims as duplicative of LAD claims even though statutory claims were dismissed and recognizing that "the underlying facts that plaintiffs allege in support of their [tort] claims, arise out of theories of liability for which the LAD provides a remedy"); *Weinberg v. Interep Corp.*, No. CIV. 05-5458 (JBS), 2006 WL 1096908, at *7 & n.3 (D.N.J. Apr. 26, 2006) (same).

> account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

N.J.S.A. 34:15-8.

Thus, courts have consistently dismissed negligent infliction of emotional distress claims based on the WCA's exclusivity provision. *See Dimare v. MetLife Ins. Co.*, Civ. No. 07–4268 (GEB), 2008 WL 2276007, at *4 (D.N.J. June 2, 2008) ("[C]laims made by employees against employers seeking damages due to the employer's negligence are barred because the New Jersey Workers Compensation Act provides the exclusive remedy for these wrongs." (citing N.J.S.A. 34:15-8; *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997)); *Brangan v. Ball Plastic Container Corp.*, No. CIV. 11-5470 RBK/KMW, 2012 WL 1332663, at *9 (D.N.J. Apr. 17, 2012) ("Plaintiff's negligent infliction of emotional distress claim is barred by WCA."); *Hilburn v. Bayonne Parking Auth.*, No. CIV. A. 07-CV-5211, 2009 WL 235629, at *11 (D.N.J. Jan. 30, 2009) ("[T]o the extent that this [negligent infliction of emotional distress claim] or any other tort claim is based upon workplace negligence, the Court agrees with Defendants that such claims are barred by the New Jersey Workers' Compensation Act"); *see also Ditzel v. Univ. of Med. & Dentistry*; 962 F. Supp. 595, 608 (D.N.J. 1997) (barring an employee's claim for negligent infliction of emotional distress after finding that the Worker's Compensation Act provides the sole remedy); *Moore v. Passaic Cnty. Tech. Inst.*,

2006 WL 1585706, at *10 (App. Div. June 12, 2006) ("Plaintiff is barred from pursuing any negligence claims because '[t]he New Jersey Workers' Compensation Act, N.J.S.A. 34:15-8, provides the exclusive remedy by which an employee may recover for injuries caused by workplace negligence.'" (quoting *Smith v. Exxon Mobil Corp.*, 374 F. Supp. 2d 406, 424 (D.N.J. 2005)).

Because Plaintiff seeks to recover from JPMC for purported acts of negligence that allegedly occurred during her employment with the Bank, the WCA preempts her negligent inflectional of emotional distress claim.  As such, that claim should be dismissed.

### D. Plaintiff's Tort Claims Should Be Dismissed Because They Are Inadequately Pled.

#### 1. Plaintiff has failed to adequately plead the necessary elements of her intentional infliction of emotional distress claim.

In addition to the grounds for dismissal discussed above, Plaintiff's intentional infliction of emotional distress claim is inadequately plead and should be dismissed for that independent reason.  To maintain a claim for intentional infliction of emotional distress, Plaintiff must allege that Defendants: "(1) engaged in intentional conduct (2) that was extreme and outrageous (3) and was the proximate cause (4) of severe distress suffered by the plaintiff." *Quarles,* 2006 WL 1098050, at *4.  The Complaint is completely devoid of any allegations to establish the second element –

*i.e.*, that Defendants engaged in extreme and outrageous conduct related to Plaintiff's employment.

"To establish extreme and outrageous conduct, a plaintiff must show conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988)). That requirement cannot be satisfied by merely demonstrating a defendant acted "unjust, unfair, and unkind." *Id.* Moreover, "[c]ourts have consistently acknowledged [that] it is difficult to establish intentional infliction of emotional distress in the employment context." *Bowie v. Costco Wholesale Corp.*, No. CV 16-5808-BRM-LHG, 2017 WL 3168985, at *6 (D.N.J. July 26, 2017) (collecting cases); *King v. Port Auth. of New York and New Jersey*, 909 F. Supp. 938, 943 (D.N.J. 1995) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.") (citation omitted).

Here, the Complaint contains only conclusory allegations that Defendants engaged in extreme or outrageous conduct as it relates to Plaintiff's employment. To the contrary, Plaintiff alleges that, for the first 18 years of her employment with JPMC, the Bank "played a major and substantial role in her life and how she defined

22

herself," and that, when her sister tragically died, JPMC "supported her throughout [the] ordeal by providing her with emotional and moral support" and "even paid for [her] . . . to stay at a hotel." (Compl. ¶¶ 14-15, 19.) Plaintiff further alleges that, even when she began having issues with Mr. Jensen and Ms. Jarnigan in 2016, JPMC granted her an extended leave of absence and worked with her to find another position when Plaintiff decided that she was ready to return and continue working with the Bank. (*Id.* ¶¶ 67-68, 93-95, 97, 100-05.) It was only after Plaintiff was unable to find a suitable position after numerous interviews over the course of several months that JPMC terminated her employment. *Id.* ¶¶ 100-05, 113.

Although Plaintiff alleges that defendants caused her to "suffer[] mentally, emotionally and physically," she does not set forth or explain what purported conduct supposedly caused those effects. Compl. ¶ 78; *see also id.* ¶ 96 ("This is emotional and mental abuse."); *id.* ¶ 140 ("Defendants acted intentionally and/or recklessly in a deliberate disregard of a high degree of probability that emotional distress would follow."). Such conclusory allegations are insufficient to adequately plead a claim for intentional infliction of emotional distress. *See Turkus v. Util. Mfg. Co.*, No. CIV. 06-4918 (AET), 2007 WL 1040986, at *3 (D.N.J. Apr. 4, 2007) (holding that "conclusory statements that Defendants intentionally or recklessly subjected Plaintiff to extreme and outrageous conduct" were "insufficient as a matter

of law to state a claim for intentional infliction of emotional distress because they are insufficient to meet the extreme and outrageous standard").

At most, Plaintiff alleges that:

- she worked well with a co-worker, but that relationship deteriorated when the co-worker developed a closer business relationship with Plaintiff's boss (Compl. ¶¶ 28-31);

- the co-worker spread unspecified false rumors about Plaintiff (*id.* ¶¶ 35-36);

- after Plaintiff complained about the co-worker, her manager treated her in a distrustful, terse, and dismissive manner (*id.* ¶¶ 37-39);

- Plaintiff was docked one week's pay in retaliation for having reported her manager and co-worker to Human Resources (*id.* ¶¶ 53-55);

- Plaintiff's manager denied her request for additional sick days, requiring her to use vacation time (*id.* ¶ 64);

- there was a delay in JPMC recruiters contacting Plaintiff to assist with finding her a new position within the Bank (*id.* ¶¶ 73-74, 81);

- Plaintiff (after herself referencing thoughts of suicide) was required to undergo a fitness for duty evaluation before returning to work (*id.* ¶ 86);

- On one occasion, Plaintiff traveled to New York City for an in-person meeting, but was told the recruiter thought the meeting would be conducted by telephone (*id.* ¶ 95);

- Plaintiff's employment was terminated when she was unable to find another position (*id.* ¶¶ 104-05, 113); and

- JPMC told the DOL, in connection with Plaintiff's application for unemployment benefits, that Plaintiff's employment had been terminated on June 14, 2018, rather than on May 29, 2018 (*id.* ¶ 110).

Conspicuously absent from Plaintiff's allegations is any mention that anyone at JPMC made any derogatory comments about Plaintiff's race or otherwise acted in

24

an overtly discriminatory manner, let alone that she was subjected to intolerable working conditions.  Accordingly, Plaintiff's allegations amount to nothing more than "ordinary" discrimination claims, and fail to rise to the level of "extreme and outrageous" conduct, as required to adequately plead a claim for intentional infliction of emotional distress.  *See Gaines*, 2014 WL 1450113, at *6 (dismissing intentional infliction of emotional distress claim and holding that allegations that plaintiff was forced to sign an agreement to stop complaining to upper management, was not assigned to her normal duties after returning from medical leave, was discriminated against because of her race, and was not provided with reasonable accommodations due to her disability amounted to "an ordinary case of employment discrimination" and did "not allege outrageous, atrocious conduct likely to cause extreme emotional distress); *Gok v. Ports Am., Inc.*, No. CIV.A. 15-3468 SRC, 2015 WL 4915518, at *4 (D.N.J. Aug. 17, 2015) ("Plaintiff has failed to plead any facts that satisfy this standard. Defendants' alleged misconduct-discriminatorily firing Plaintiff, failing to inform her that the office was closed after Hurricane Sandy, and asking her to exit a meeting-simply does not rise to the level of behavior that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (citation omitted)); *Bishop v. Inacom, Inc.*, No. CIV. A. 99-664 (JBS), 1999 WL 1416919, at *9 (D.N.J. Dec. 1, 1999) (granting motion to

dismiss intentional infliction of emotional distress claims and finding that allegations that her manager "was rude to [plaintiff] and made degrading comments about her; that plaintiff was chagrined when [human resources] told her that she was not being part of the team; that she was fired in retaliation for her complaints about [her supervisor]; and that [employer] breached an implied employment contract" were "not sufficiently outrageous to go beyond all possible bounds of decency" (citations omitted)); *see also Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 377 (S.D.N.Y. 2012) (dismissing intentional infliction of emotional distress claim and finding that allegation of harassing comment "does not meet the 'rigorous, and difficult to satisfy' pleading standard for claims of intentional infliction of emotional distress" (citation and quotation marks omitted)).

Because Plaintiff has failed to adequately plead her claim for intentional infliction of emotional distress (Count Four), that claim should be dismissed.

### 2. Plaintiff has failed to adequately plead the necessary elements of her negligent infliction of emotional distress claim.

Plaintiff has also failed to adequately plead the necessary elements of her negligent inflection of emotional distress claim. That claim "is intended to compensate those who witness 'shocking events that do not occur in the daily lives of most people.'" *Soliman v. Kushner Companies, Inc.*, 433 N.J. Super. 153, 177 (App. Div. 2013) (citing *Frame v. Kothari*, 115 N.J. 638, 644 (1989)). Consistent

with that purpose, a plaintiff can only state a viable claim of negligent infliction of

emotional distress under two theories:

> First, a plaintiff can show: 1) "death or serious physical injury
> of another caused by defendant's negligence; 2) a marital or
> intimate family relationship between plaintiff and the injured
> person; 3) observation of the death or injury at the scene of the
> accident; and 4) resulting severe emotional distress." *Fleming
> v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 166 (Law.
> Div. 1992). Second, a plaintiff can show "the defendant's
> negligent conduct placed the plaintiff in 'reasonable fear of
> immediate personal injury' which gave rise to emotional
> distress that resulted in a substantial bodily injury or sickness."
> *Jablonowska v. Suther*, 195 N.J. 91, 103 (2008). Under the
> second standard, New Jersey law has adopted the "zone of
> danger" rule, where "immediate fear of personal injury could
> serve as the basis for recovery so long as 'substantial bodily
> injury or sickness' result." *Abouzaid v. Mansard Gardens
> Ass'n, LLC.*, 207 N.J. 67, 77 (2011).

*Van Tassel v. Ocean Cty.*, No. CV 16-4761-BRM-TJB, 2017 WL 5565208, at *9-10

(D.N.J. Nov. 17, 2017).  In either case, a plaintiff must allege "the traditional

elements of negligence – i.e., duty breach, causation, and damages – as well as "that

it was 'reasonably foreseeable that the tortious conduct [would] cause genuine and

substantial emotional distress or mental harm to average persons.'"  *Celestin*, 2016

WL 5539584, at *15.  Given this very high standard, "[e]vents or circumstances that

have been found to present cognizable claims under this tort include a mother who

discovered her eight-year-old son lying crumpled in the street minutes after he was

struck by a bus, or cases involving loss of a corpse." *Celestin v. W. Deptford Twp.*,

No. 15-7608 (NLH/KMW), 2016 WL 5539584, at *15 (D.N.J. Sept. 29, 2016) (citations omitted).

Here, because Plaintiff does not even attempt to allege that she witnessed "death or serious physical injury" of a family member related to her employment-based negligent infliction of emotional distress claims, she appears to proceed under the second, "zone of danger," theory. The Complaint, however, fails to allege the requisite elements of that theory. Indeed, while the "Statement of Facts" in the Complaint contains more than 100 paragraphs, Count Five contains no non-conclusory allegations specific to Plaintiff's negligent infliction of emotional distress claim, which alone warrants dismissal.

This Court faced a similar scenario in *Pollis v. Bd. of Chosen Freeholders of Cty. of Sussex*, No. CIV.A. 09-3009 (SRC), 2009 WL 5064634, at *2 (D.N.J. Dec. 15, 2009) and dismissed the plaintiff's negligent infliction of emotional distress claim for failing to satisfy "the requirements for the pleading of facts under [Federal Rule of Civil Procedure] 8." There, as here, the plaintiff's complaint merely "provide[d] a virtual blow-by-blow account of many of [her] experiences . . . , describing an extensive series of events involving improper conduct" followed by "eleven counts in which she assert[ed] in conclusory fashion that the preceding allegations give rise to each of the eleven causes of action." *Id.* The Court found that such a pleading required the Court "to somehow divine which particular factual

28

allegation provides the underpinning for the various causes of action" and thus "constitute[d] the exact antithesis of the 'short and plain statement of the claim' required by Rule 8." *Id.* The same result follows here as the Complaint contains no allegations specific to Plaintiff's negligent infliction of emotional distress claim.

Even if the Court were inclined to comb the Complaint for allegations supporting Plaintiff's negligence claim, it should still dismiss Plaintiff's claim for failure to allege the requisite elements. First, Plaintiff does not allege that Defendants owed her any particular common law duty that it somehow negligently breached, as is necessary for any negligence claim. Furthermore, while Plaintiff alleges that she suffered certain health/medical conditions, including "chest pains, high blood pressure and breathing issues" (Compl. ¶ 63), she does not aver that those alleged conditions were caused by a "reasonable fear of immediate personal injury," or that Defendants were somehow responsible for threatening Plaintiff's physical safety. As such, Plaintiff has failed to adequately allege a viable claim for negligent infliction of emotional distress, and that claim should be dismissed. *See Torrey v. New Jersey*, No. CIV.A. 13-1192 PGS T, 2014 WL 941308, at *23 (D.N.J. Mar. 11, 2014) (dismissing negligent infliction of emotional distress claim where plaintiff failed to plead "any facts showing that he was placed 'in reasonable fear of immediate personal injury'"); *Gok v. Ports Am., Inc.*, No. CIV.A. 15-3468 SRC, 2015 WL 4915518, at *4 (D.N.J. Aug. 17, 2015) (dismissing negligent infliction of

emotional distress claim, where plaintiff failed to allege that "Defendants' negligence caused her 'a reasonable fear of immediate personal injury' that caused 'substantial bodily injury or sickness.'").

### E.   Plaintiff's Claims Against Mr. Dimon Should Be Dismissed.

#### 1.   Plaintiff fails to allege viable LAD claims against Mr. Dimon.

Plaintiff's LAD claim against Mr. Dimon (Counts Six of the Complaint) is baseless and should be dismissed by the Court for several important reasons.  First, under the LAD, there can be no individual liability unless the employer is first found liable.  *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594 (2008).  Because Plaintiff's LAD claims against JPMC fail as a matter of law, as demonstrated above, her claims against Mr. Dimon should also be dismissed.  *See DeSantis v. New Jersey Transit*, No. CV 14-3578 (KM)(MAH), 2017 WL 5050039, at *11 (D.N.J. Nov. 3, 2017) (dismissing LAD claims against individual defendant because "[a] defendant cannot assist in or abet a principal violation unless there is a principal violation"); *Roman v. Waste Mgmt. of New Jersey*, No. CIV.A. 10-4337 JAP, 2011 WL 1807642, at *5 (D.N.J. May 12, 2011) (same).

Second, even assuming that the Court finds that Plaintiff has asserted a viable LAD claim against JPMC, her LAD claim against Mr. Dimon should nevertheless be dismissed because Plaintiff has failed to adequately allege the necessary elements of that cause of action with respect to Mr. Dimon.  An individual can only be held

liable under the LAD if he "aids or abets" any action forbidden by the Act.   *See* N.J.S.A. 10:5-12e; *Cicchetti*, 194 N.J. at 594.   To impose individual liability for aiding and abetting under the LAD, a plaintiff must show that the defendant: (1) aided another in performing a wrongful act that causes an injury; (2) is generally aware of his role as part of an overall illegal or tortious activity at the time he provided such assistance; and (3) knowingly and substantially assisted the principal violation. *Cicchetti*, 194 N.J. at 594 (citing *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004)).

Here, the Complaint contains no allegations that Mr. Dimon, the Chief Executive Officer of JPMC's parent company, was involved in any decisions or actions related to her leave of absence, approval to return from her disability leave, efforts to assist her in finding another role or the decision to terminate her employment, let alone any alleged discriminatory or retaliatory acts.   To the contrary, the only alleged conduct in which Mr. Dimon purportedly engaged was to denounce discrimination as a general matter, and to explain, during an interview, that the Bank was "'making a special effort' to bring on more African-Americans by setting up a separate group to focus on school recruiting, retention and hiring []more senior African-American talent."   (Compl. ¶ 25.)   Plaintiff does not allege that Mr. Dimon played any role in her employment whatsoever, other than the fact he held a town hall meeting that she attended (*id.* ¶ 17), and that she would sometimes provide back-up support in the executive offices where his office was located (*id.* ¶ 11).

31

Because the Complaint fails to allege any facts whatsoever to support that Mr. Dimon "knowingly and substantially assisted" any violation of the LAD, Plaintiff's statutory claim against him should be dismissed.  *See Ross-Tiggett v. Reed Smith LLP*, No. CV 15-8083 (JBS-AMD), 2016 WL 4491633, at *8 (D.N.J. Aug. 25, 2016) (dismissing LAD claims against individual supervisors because the complaint failed to allege the individuals "were responsible for making the decision to place Plaintiff on administrative leave and to ultimately terminate her"); *DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) (dismissing LAD claims against individual defendants because "[t]here is no allegation that the individual defendants themselves discriminated against [plaintiff], that they assisted in the alleged discrimination, or that they knew they were playing such a role"); *Guarneri v. Buckeye Pipe Line Servs. Co.*, No. CIV.A. 14-1131 JBS, 2014 WL 1783072, at *3 (D.N.J. May 5, 2014) (dismissing aiding and abetting claim under the LAD against human resources representative for failing to allege that the individual "was aware of her role in an illegal termination or that [she] knowingly and substantially assisted the LAD violation," despite allegations that she informed plaintiff that he was terminated and the reasons for the decision).

To the extent Plaintiff alleges that Mr. Dimon somehow had an obligation, as CEO, to make individual employment decisions with respect to her role, and failed to take appropriate action in addressing her complaints of alleged discrimination,

retaliation, and/or harassment, it is well-settled that allegations of alleged inaction or indifference are insufficient to adequately plead a claim for aiding and abetting under the LAD.  *See Brown v. Joel Tanis & Sons, Inc.*, No. 2:13-CV-02984 (WJM), 2016 WL 3951378, at *3 (D.N.J. July 21, 2016) (dismissing LAD claim against company owner who allegedly "had knowledge of the racial slurs directed against Plaintiff by other . . . employees" but "failed to effectively respond to Plaintiff's complaints" because "this conduct falls short of the 'active and purposeful conduct' required to hold [an individual] liable for aiding and abetting under the NJLAD"); *Collins v. James W. Turner Constr., Ltd*, No. CV162877FLWLHG, 2017 WL 210236, at *9 (D.N.J. Jan. 18, 2017) (recognizing that "mere failures 'to act so as to protect plaintiff' or failure to 'effectively respond to [plaintiff's] complaints of discrimination' 'fall well short of the active and purposeful conduct that [the New Jersey Supreme Court] ha[s] held is required to constitute aiding and abetting for purposes of ... individual liability.'" (quoting *Cicchetti*, 194 N.J. 563, 595, 947 (2008)).  Accordingly, Plaintiff's LAD claim against Mr. Dimon should be dismissed.[3]

---

[3]     Because Mr. Dimon's alleged connection to New Jersey, at most, is limited to receipt of communications that Plaintiff presumably sent to his email address from her home, this Court also lacks personal jurisdiction over Mr. Dimon.  *See Collins*, 2017 WL 210236, at *9 (holding that "Plaintiff has failed to introduce any jurisdictional facts tending to show 'active and purposeful conduct' by Defendant Owens to assist in the principal's alleged NJ LAD violation" given that only interactions with plaintiff were communication regarding termination, which "are

### 2. Plaintiff fails to allege viable tort claims against Mr. Dimon.

For similar reasons, Plaintiff's tort claims against Mr. Dimon are baseless and should be dismissed.  Under New Jersey law, "a director or officer does not incur personal liability for the torts of a corporation based on the official position."  *A.S.T., LLC v. Carvin Pallenberg*, No. CIV. 07-795JAP, 2008 WL 2074010, at *5 (D.N.J. May 15, 2008).  "Rather, a director or officer may be personally liable if he or she: (1) commits a tort in his or her individual capacity; (2) directs the tortious act; or (3) participates or cooperates in the commission of the tort."  *Id.*

As demonstrated above, the Complaint does not contain allegations sufficient to plead viable claims for negligent or intentional infliction of emotional distress, much less that Mr. Dimon – who is not alleged to have engaged in any affirmative inappropriate conduct – somehow committed, directed, or participated in tortious conduct.  Accordingly, Plaintiff's tort claims against Mr. Dimon are inadequately pled and should be dismissed.  *See Bethea v. Roizman*, No. CIV. 11-254 JBS/JS,

---

not sufficient minimum contacts to subject her to personal jurisdiction in New Jersey"); *Bartone v. NetJets, Inc.*, No. CIV.A. 11-8 MLC, 2011 WL 2532497, at *8 (D.N.J. June 24, 2011) (finding "no basis for the exercise of specific jurisdiction over [individual defendant]" because "[n]one of Plaintiff's causes of action are predicated on any activity by [individual defendant] occurring in or related to New Jersey"); *Ribustello v. Wilson Sporting Goods Co.*, No. 12–2326, 2013 WL 140096, at *3 (D.N.J. Jan. 10, 2013) (declining to extend jurisdiction where "Plaintiff's only allegation as to [one individual Defendant wa]s that [he] failed to respond to one email that Plaintiff sent from New Jersey .... [and where] Plaintiff's only allegation as to [another individual Defendant wa]s that [he] made one telephone call from Illinois to New Jersey to inform Plaintiff of his termination").

2012 WL 2500592, at *32 (D.N.J. June 27, 2012) (dismissing emotional distress claim against company CEO because plaintiffs "failed to allege facts to establish that [the CEO's] conduct was extreme and outrageous," and "[t]he only specific allegations about [the CEO's] conduct in her individual capacity state that she met with the [other] Defendants in her capacity as CEO of the Cooper Foundation," which are "bare allegations [that] do not rise to the level of extreme and outrageous conduct").

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss and enter an order dismissing Plaintiff's Complaint in its entirety for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
*Attorneys for Defendants JPMorgan Chase Bank, N.A. and James Dimon*

Dated:  October 2, 2018

s/ Jason J. Ranjo
Grace E. Speights (*pro hac vice*)
Terry D. Johnson
Jason J. Ranjo